Good morning. May it please the Court, my name is John Derrick and I appear for Petitioner Stefan Ghazaryan. During the course of this appeal, the government has made a fairly fundamental change of course. It began off by arguing that the petition should be denied because it had no merit. Now it argues that the petition should be dismissed because it does have merit. And the government in coming to this conclusion focuses and maybe fixates on three things that it believes that the BIA got wrong. And I'd like to address each of those in turn, if I may, and show why even if there was, and indeed there was, error in the BIA's decision, which is why I'm present, but why it doesn't justify the type of relief that the government seeks. The government wants a remand, right? The government wants a remand, and it may indeed be that at some level, given that this Court can't exercise the administrative function of granting asylum, it does have to go back into the agency system. But the question is how and with what marching orders. The government wants the petition dismissed and just sent back to the BIA. My client takes the position that even if it goes back into the agency system, it should be a remand to the Attorney General with marching orders. Indeed. And the three issues that the government raises are as follows. First, the government says that the BIA must review the impact of this Court's decision in Mammoosian. Now, the government appears to agree by making the suggestion that Mammoosian is on point, that it is controlling, and that it is good law. And I agree with the government entirely on that. But it isn't actually new law. Mammoosian, although from my point of view of representing Mr. Ghazarian, it is perhaps as close to a perfect case as one can come up with in terms of facts that are uncannily similar. But it actually states law that was settled beforehand, namely that violence given against an individual who challenges government corruption is a form of political persecution. Now, the BIA, far from just not addressing this issue so that it has to be sent back so the BIA can make a decision in the first instance, the BIA really did address the whole corruption issue, but it just marginalized it. On the second page of its decision, and this is at page 4 in the administrative record, referring to the mistreatment of Mr. Ghazarian, the BIA says that it also appears motivated by his filing of a complaint against police officials who he acknowledges are corrupt. And the use of acknowledges seems to suggest that the BIA regarded this as an irrelevant factor. It certainly isn't irrelevant. It is at the core of the reason why Mr. Ghazarian should prevail in his action. So there's really no need to send the case back so that the BIA can consider Mammoosian. The other two issues refer to factual discrepancies that, in my opening brief, I pointed out that in the government's brief it acknowledges. One is this issue about when Mr. Ghazarian joined the NDU political party. The BIA stated that it was after he was hired by the military police as though to suggest that, therefore, they can't have been too bothered by his membership of that political party. Whereas, in fact, the record shows that it was beforehand. But, you know, that certainly makes Mr. Ghazarian's case stronger, but his case doesn't revolve around that whole issue. Indeed, if one does regard, as the government appears to agree that we should, that Mammoosian is a controlling case, in Mammoosian the Petitioner, on my reading of that case, wasn't even a member of a political party at all. At least there's nothing in the case. So Ghazarian doesn't have to be a member of a political party in order to prevail in his action. Certainly it makes his case stronger, but it would be, in my opinion, absurd to send the case back and for him to have to go back to the start of this whole process simply because the BIA got that fact wrong. And then there's the issue about the visit to his house or his parents' house after he spoke at the rally in Freedom Square. The BIA suggested that the visit was concurrent with the rally, with the meeting, as though to suggest that it couldn't have been caused by his participation in that meeting, whereas the record shows that it was actually consecutive. But again, you know, this fact makes his case stronger, but it doesn't turn – the case doesn't turn on it because it's clear from the record that the violence had begun much earlier after he went to speak to the military prosecutor. He was picked up by police, imprisoned for 25 days, and beaten repeatedly. So the fact that the BIA got that wrong really doesn't justify sending it back. There are in this Court, I have no doubt, many who are much more familiar with the immigration review process than I am in terms of the number of cases they review. But I suspect that this case isn't the only one where the BIA sometimes makes mistakes of fact which really don't go to the core of the case. And if every case was sent back simply because the government, sensing that it really is losing on the merits, and the government hasn't even tried to argue this case on the merits, if every case gets sent back for that reason, then the already overburdened and far from fast system of judicial review of these cases would become – Roberts. Let me ask you one question about the proceedings before the BIA. Did the government ever argue that there were changed country conditions? To the best of my knowledge, it did not, Your Honor. But I don't recall that argument being made. Certainly, if it was made, it wasn't referred to in any papers that the government has filed before this Court. The last point I'll make, because I wanted to save a little time for rebuttal, is – How about before the IJ? Before the IJ, I don't recall that from reading the transcript. And certainly, the IJ's decision didn't even mention country conditions, nor, for that matter, did the BIA's decision do it – do so. Of course, I mean, this Court has – I think everyone, or as the government agrees in any event, isn't reviewing the IJ's decision. It's reviewing the BIA's. But I think that the – The question was what the government's position was. To the best of my recollection, the government never made that argument. And it – and at the – at the IJ level, to the best of my recollection, it just really just relied on attacking the credibility of Mr. Gazarian. The last issue I'll address – and I hope the Court doesn't even need to get to this, but I'd like to address it briefly just in case it does – is if the government ends up agreeing with the government and not with Mr. Gazarian, what then happens in terms of the remand? It would be, in my opinion, grossly unfair if it were just sent back to the BIA with an open-ended remand for it to do what it wanted, so it could then just give a summary of affirmance or make credibility or adopt the IJ's credibility. Let me stop you there on credibility. I'm a little puzzled as to what the BIA actually did here with respect to credibility. As I read paragraph two of the BIA's decision, they adopt the IJ's statement of facts and law specifically citing pages 1 through 13 of his opinion, which are not his credibility findings. The IJ finds your client largely credible, seems to suggest that there might be some tinkering around the edges where he doubts his story, but in large measure credits him. The BIA does not adopt the IJ's credibility findings, as far as I can tell, and then simply assumes that if his claim is credible, that he still doesn't qualify. Are we to conclude from this that the BIA then has conceded his credibility? Your Honor, the law, as I cited it in, I believe, the standards of review section of my brief, is that if the BIA does not adopt the credibility findings of the IJ, then this Court, when it reviews the BIA's decision, assumes the Petitioner to have been credible. I wish I could cite the case. I can do so when I return for my reply, because it's in my brief. But so to that extent, I think the answer to your question is yes, that the BIA, and indeed this Court, takes what Mr. Guzzarian has said as true. And indeed, I would just further point out that in the government's original brief in this case, because it then filed subsequently a replacement brief, but in its original brief, responding to Mr. Guzzarian when Mr. Guzzarian was improper, when Mr. Guzzarian was improper and didn't quite get the finer points of standards of review, he actually did argue all about the credibility. And the government came back in its brief and said, Mr. Guzzarian doesn't understand everything. The IJ's credibility findings aren't at issue. The BIA made its own review, and everything assumes, you know, everything is assumed to be true in terms of what Mr. Guzzarian said. The last point that I would just like to say, though, about what to do if the government does end up agreeing, if the Court does end up agreeing with the government and not with me, is the scope of the remand. Now, earlier, and I should say, this whole issue that we are arguing about today was the subject of a motion the government filed earlier on, a motion to remand which was denied. During the course of that motion, the parties did enter into a stipulation which is in the Court's files. It was filed on February the 22nd as to what, if there were to be a remand, the scope of it should be. I don't necessarily hold the government to that stipulation now because it was a stipulation in the event of the motion being granted, and so I don't – I'm not suggesting the government is bound by that stipulation. But I do – What was it? What did they stipulate to? Well, it's – it essentially lists the areas which a remand should be limited to, and it is the impact of Mimousian and the various factual discrepancies that are issued, that and that only. Now, I don't believe it should go back to BIA for this review at all. I believe that the case – that the petition should be granted and not dismissed and that whatever return it might have into the administrative system in order for the asylum petition to be – to be complete, it should be with a clear mandate from this Court as to the issues of law, which is – and that, I think, is where the government fundamentally differs from Mr. Guzzori. I think we understand what you're saying in your two minutes over your time. Oh, okay. So thank you. Thank you, Your Honor. Might I still possibly, though, have a brief rebuttal? Well, let's just see how it goes with the government. Okay. Good morning. May it please the Court. Alan Birch for the government. This case needs to be remanded. I think the issue before the Court is what instructions, if any, to provide to the agency on remand. In our view – Well, suppose we disagree with you. Suppose we think that Mimouzian, having been on that panel, relied entirely on preexisting law, which the BIA disregarded. I think that's correct. Mimouzian is clearly a statement of preexisting law, and we would concede that that argument in terms of the impact of Mimouzian – I mean, this circuit has been clear since before the time of the hearing that whistleblowing activity can't count as political opinion. And it is clear that the prosecuting attorney, the IJ, and the Board all made the same fundamental error of law, and that is what led them to a fundamentally incomplete analysis of the facts of the case. And that is my – Not just incomplete, but the BIA specifically – and this was my question to Mr. Derrick – appears to reject the adverse credibility findings, whatever they were. Because – and as I read your brief, you've conceded that the – for purposes of this appeal, that Mr. Kazarian is credible. With the important provisos for the purposes of this appeal, the same way that the Board treated it, that we would – the Board's analysis was – So we're to assume that his statement – that his story is correct. The BIA, on page two of its decision, then goes out of its way to cite a couple of instances where it believes that his claim is not supported. And it gets all of its facts wrong. That's right. That's right. It's just outright wrong. It goes out of its way to tell us two things and gets both of them wrong. Right. The last brief we filed on the petition for – asking for remand identified the three key factual errors. It's clear. The record is clear. He joined the police before he joined the union. It's clear that the – his home was raided shortly after he gave his speech in April. It's also clear that the four people who raided his house included two soldiers. Now, we don't know who they are, but that's irrelevant. We know that it includes the government. We all know where the BIA got wrong. Okay. But when the BIA rests its decision on things that are not at all remotely supported by the record, then we review the BIA decision for substantial evidence and would – we would not give the BIA a second chance. We'd just say what the BIA decided was not supported by substantial evidence in the record because it totally miscited the record. Well, with all due respect, Your Honor, the Supreme Court in Ventura makes plain that when issues are not raised – That's not how – that's not – believe me, I'm sorely familiar with what the Supreme Court said in Ventura. That is not – it's when the agency – a Ventura remand is when the agency has not had an opportunity to make fact-finding on an issue. Here it is clear the BIA made fact-finding. It just got it wrong. If I may, Your Honor, if the proceedings below had applied the correct pre-existing law about whistleblowing, they would have perhaps, probably, in my view, probably come to the conclusion that Kazarian had shown past persecution, which would entitle him to, under the law of the circuit, a presumption of future persecution upon return. This is a rebuttable presumption, however, and because of the legal error that the immigration judge and the government attorney and the board were all operating under, they viewed it unnecessary to go any further and address the issues that would the government could raise to rebut the presumption, specifically change circumstances and whether he could relocate safely within the country. That is why the case is a direct parallel to Ventura, because Ventura talks in the question of, you know, what is going to happen on remand in terms of both of those questions. And, indeed, Ventura says remand could lead to presentation of further evidence of current circumstances, evidence that may well prove the matter. In Ventura, we decided the question of the changed circumstances when the agency had not. That's right, Your Honor, but it's the... We were told we couldn't do that. And then we were told that again in Thomas recently where they... That's right. ...said we can't, you know, you've got to let the agency make the decision first. I failed to see here where they didn't have the opportunity to decide all the issues that were raised in his asylum effort. But it's the legal error that infected the whole process, Your Honor. The presumption... But the law was, if you recognize, the law in this area was established when they decided this case. Well, first of all... So what you want us to say is, okay, you guys just didn't get it. You just don't understand the law. But they needed to... And because you don't understand the law, we're going to give you another chance to get it right. That's what we're supposed to say? Fundamentally, the baseline... That's how you read Ventura? If I may, Your Honor, Ventura and Thomas both stand for the strong presumption that unless it is an extremely rare circumstance, on remand, the agency does it over again. Now, the rare circumstances that are contemplated in those cases are not the sort of thing that occurred here. What part of Ventura? Can you point to me what part of Ventura? I mean, I understand, you know, we've had this, you know, we have been told by the Supreme Court that we the agency or the board has not decided. Correct, Your Honor. All right. Now, the board, as I read this, Judge Bidey went through this, as I read this, the agency had a chance to decide. But the board... Issues. What the board did not do is probably tee up the question of the presumption of future persecution. It simply made the findings based on its incorrect factual understanding. It did not properly reach the issue of the presumption and set it up as rebuttable. Even if you don't buy me on that, Your Honor, I have other arguments as well. First, also... The problem is they're running these cases too fast through the system. They're just not taking the time. Well, witness my presence... And I don't want to go there, but... Witness my presence here in Washington. This is what happens. I mean, this is what happens. Yes, Your Honor. The whole system is just... But the point is to get it right. Administrative law is different than criminal law or civil law where it is not the court system that is making the findings or the legal reasons in the first instance. And that is why the strong presumption of the agency doing it over again applies. Okay. Well, let me ask you just on another issue before your time runs up. Hasn't the government waived any argument on the merits? Because in its red brief, it does not make a single argument on the merits. All it asks for is remand. And it seems to me that under our law, you've waived a merits argument because you rested solely on remand, and you could have easily done this brief in the alternative. But, Your Honor, the issue is the remedial issue begs the question of what the court can order. The court cannot order asylum, and it is our position that the court should not be ordering or withholding a remand in this case. You did not argue merits at all in this case. I'm not understanding your view of merits. We argued the facts and we argued the... You argued for a remand. That's right. You sort of almost conceded that he's entitled at least to a remand. He is entitled to a remand, Your Honor. Right, right. And so you didn't say anything about why he would not be entitled to asylum. Well, I apologize for the incompleteness of the brief, Your Honor. No, no, no. That's waiver. It's called waiver of the legal argument. But asylum is not something the court can grant and is fundamentally up to the... No, but we would remand to the Attorney General for an exercise of his discretion, and we would not usurp that at all. That's correct. The question that you've argued, I understand, is a little different, which is that you want to say, okay, if that's what you – if that's what the court thinks, then we need – now the government now needs an opportunity to show that there's changed country conditions. But changed country conditions sounds to me very much like an affirmative defense. And you've had a hearing and you've had an opportunity to show changed country conditions. And if you didn't put that evidence on at the initial hearing, I don't know why you get a second shot at this. But that's the difference between administrative law and civil law, criminal law, Your Honor, where the fundamental baseline is a remand. Moreover, it's not inconsistent with the law of your circuit, where remand is ordered in situations where the factual findings are not complete to decide the issue correctly and where the government has not conceded either eligibility for asylum or withholding of removal. And that is certainly the case here. We have not conceded either of those. And the factual findings necessary to reach the correct result have not been made down below. Those are two distinct – You didn't even address them. You didn't even address them in your argument on appeal. I mean, you just simply didn't argue based on what was in the record. And we normally don't send back case – even administrative law cases or criminal cases, any kind of cases for additional evidence. But, Your Honor, the question is the remedial question, not the question of what evidence was considered below. Well, you know, it's actually piling on inefficiency upon inefficiency because, you know, you admit they screwed up. You come to us. We all know. We're sitting here having oral arguments, spent a lot of time on this stuff. We know they screwed up. And now you want us to send it back, which, you know, another hearing. If I may, it's fully appropriate to have in your remand order instructions that say apply the right law on whistleblowing and get those three facts right. And if the government is going to go any further than that, then the BIA needs to justify why that's necessary. That's my point. It should have already been in the record. And if it's not – if it is in the record, then you failed to argue it and it's waiver. And if it's not in the record, you don't get to put it in now. Well, I see it as a pure question of law under their own – what is the correct scope of remand. I don't see it as dependent on the record. Well, then I guess we see it differently. Does anyone else have any other questions? No, I just – All right. Thank you very much. I don't think you need to – just we'll submit the case of Gazarian v. Gonzalez and we'll take up United States v. Prieta Quezada. Thank you.
judges: Wardlaw, Paez, Bybee